Herbert, J.,
dissenting. Upon the facts which are undisputed in the instant case, I must dissent from the opinion, syllabus and judgment.
Full force, and effect were given to all the pertinent provisions of Section 3311.23, Revised Code, by the school boards of Richland and Huron Counties as well as the electors of the Shiloh and Plymouth Local School Districts.
Granted that this section uses the singular “a” with respect to the adoption of a resolution providing for such transfer, the record here clearly discloses that, but for the intervening requested ruling of the Attorney General in Opinions of Attorney General (1957), No. 644, the transfer would in all probability have been completed without proceedings in mandamus. No confusion resulted in the procedures subsequent to the passage of the resolution by the Richland County Board of Edu *97 cation on April 3, 1957, until the request for opinion of the Attorney General. There is no ambiguity in that resolution or in the acceptance resolution of the Huron County Board of Education. The resolution transferring the two local school districts was clearly separable and was acted upon in its two separable parts.
The filing of the remonstrance by electors of the Shiloh Local School District was done in accordance with Section 3311.23, Revised Code, and the subsequent withdrawal of names therefrom caused the Board of Education of Richland County, considering it only as affecting the Shiloh School District, to find such remonstrance insufficient and dismiss it accordingly. No remonstrance was attempted by the electors of the Plymouth Local School District, so that at the expiration of the statutory 30-day period the concluding steps for completion of the transfer were taken by the Huron County Board of Education.
The pleadings admit that there was no failure or confusion with regard to the filing with the county auditor of each county affected of the map showing the boundaries of the territories sought to be transferred.
Paragraph (B) of Section 3311.23, which provides for an equitable distribution of the funds and indebtedness, between the districts involved, by the county board making the transfer, could not be complied with, of course, following the Attorney General’s opinion, but there is nothing to indicate any mathematical obstacle involved.
Section 1.10 of the Revised Code provides:
“As used in the Revised Code, unless the context otherwise requires:
i i # * *
“(C) Words in the plural number include the singular number, and words in the singular number include the plural number.”
I see nothing in the context of Section 3311.23 which requires the passing of two separate resolutions in the instant case.
The answer of respondent Board of Education of Richland County admits the allegations of the relators’ petition that on or about March 20, 1957, it met in joint meeting with the Board *98 of Education of Huron County and the boards of education of the Plymouth and Shiloh Local School Districts two weeks before the formal passage of the resolution.
It must be recognized that, if proposed transfers were intended to go to different counties or there were ambiguities apparent on the maps showing boundaries, a resolution embracing more than one such proposed transfer could fail because of difficulty or inability to follow procedures required under the statute. Here, however, there is no ambiguity and no difficulty in following procedures, either as to written remonstrances, maps showing boundaries, or division of funds and indebtedness between the districts involved.
It would seem to the writer more in the interest of substantial justice to determine the issue in favor of the relators upon the facts in this case rather than to lay down a blanket rule that a county board of education is precluded from transferring territory located in more than one local school district in a single resolution. It is obvious that the action taken up to the point of the Attorney General’s opinion was mutually agreed upon by the school districts involved, both county and local, with the knowledge and tacit approval of the state Board of Education, and that no substantial obstacle remained in the way of full compliance with the procedural steps set forth in Section 3311.23.
The majority opinion pictures the possibility of a situation “where a majority of persons residing in one district, who objected to a transfer of their territory, could, by procuring sufficient signatures to a remonstrance, stop the transfer of the territory included in their district as well as that of another district incorporated in the same resolution, even though the residents of such other district might be in favor of the transfer of the territory in their district.”
That possibility is, of course, refuted on the record here, because, had the written remonstrance of the Shiloh Local School District been found sufficient, that portion of the resolution would have automatically failed, but the portion relating to the Plymouth Local School District could still have been made operative.
The majority opinion also poses the possibility that a *99 member of a county board of education might favor one proposed transfer and oppose another, thereby making it difficult.
The answer to that possibility, although not present here, is that, should a majority of the members of either county board of education involved oppose a transfer of one territory while favoring the transfer of another, they could vote down the entire proposed transfer and thereupon cause a separation of proposals into two separate resolutions.
The majority opinion cites the case of State, ex rel. Finley, v. County Board of Education (1931), 124 Ohio St., 324, 178 N. E., 313, as authority for its position, asserting also that since that decision the General Assembly has not seen fit to change this particular phraseology. The syllabus in that case would seem to be pertinent standing alone, but, when read in the light of the facts as stated in the opinion therein, it loses all its force. Section 4696, General Code, there under consideration was repealed in 1943 and substantially re-enacted as Section 4831-13, General Code, in a comprehensive recodification and revision of the public school laws at that time. As it was under consideration in the Finley case, Section 4696 provided in part:
“A county board of education may, upon a petition of the majority of the electors residing in the territory to be transferred, transfer a part or all of a school district of the county school district to an exempted village, city or county school district, the territory of which is contiguous thereto. Upon petition of 75 per cent of the electors in the territory proposed to be transferred the county board of education shall make such transfer.” (Emphasis added.)
In that case the territory sought to be transferred (under the provision of the sentence immediately above) was situated in two township rural school districts, Westland and Adams. As stated in the opinion, the petition in mandamus alleged that the petition filed with the Board of Education of Guernsey County was signed by more than 75 per cent of the electors of the territory sought to be transferred but contained no averment that the petition was signed by 75 per cent of the electors residing in the territory situated in the Adams township district and by 75 per cent of the electors residing in the Westland township district. The Finley case was brought under the *100 mandatory provisions of the last sentence of Section 4696, General Code, quoted above, requiring a county board of education to make a transfer upon petition of 75 per cent of the electors affected. The following language of Robinson, J. (page 326), should be noted:
“The question is thus raised whether the provisions of Section 4696, General Code, under favor of which section the petition for transfer was filed, and upon which section this action is based, contemplate the joining of territory, taken from two separate rural school districts, in one description and one petition; and, if so, whether the transfer of such territory becomes mandatory upon the county board of education upon the petition of 75 per cent of the electors of the combined territory, even though there be less than 75 per cent of signers residing in the territory of one of such rural school districts, if there be a corresponding excess of 75 per cent in the other.”
In that case it was neither pleaded nor established that 75 per cent of the electors from each of the territories sought to be transferred had signed the petition. Also to be noted is the portion of the opinion immediately following that quoted above:
“The language of the section itself is ‘a school district,’ and ‘such school district,’ in the singular. That fact would not of itself compel an interpretation excluding the application of the statute to a petition for transfer of territory lying in more than one school district if the manifest purpose of the legislation were consistent with such interpretation. When, however, this section is considered in connection with other legislation upon the subject of county boards of education, it becomes apparent that the purpose of this section was to confer a moiety of self-determination upon any or all of the electors of a school district, and, in a measure, to emancipate them from the dominating power which the Legislature had conferred upon county boards of education.”
That case is, therefore, clearly distinguishable from the one here under consideration. In fact, the basis of the decision was obviously to protect the electors of each territory affected rather than to interpret the statute narrowly because of the use of the singular. It does not appear to the writer to be authority for the decision here. Cf. paragraph two of the sylla *101 bus in the case of Baltimore & Ohio Rd. Co. v. Baillie, 112 Ohio St., 567, 148 N. E., 233.
The adoption of a separate resolution for each proposed transfer may be more desirable, and certainly that procedure should be followed where there is any chance of confusion or doubt of separability, but the net result of the decision in this case only adds to the further confusion of a situation which, but for the request for opinion, would probably not have arisen.
Tae-t, J., concurs in the foregoing dissenting opinion.